We'll move now to the third case of the day. Lee and others against the Northeast Illinois Regional Railroad, Appeal 18-1930. And we'll hear from Ms. Willis, if you would hang on just a second and don't start the clock yet. We'll let a few more folks get out of the room. Go ahead. Good morning, honorable judges of the panel. May it please the court. I am Jill Willis, counsel for the appellants. This case involves 12 present and former Metro police officers, African Americans. Contrary to what the appellees have indicated, they are not all former employees. There were some who were terminated in the course of this litigation. There are three that are still employed by Metro as police officers. All of the 12 appellants have alleged racial discrimination in employment and retaliation for participating in protected activities. Two of the women, there's nine men, three discrimination. One male is also alleging failure to accommodate a disability. So a violation of American Disabilities Act. This case involved notice pleading. There was no discovery. There were no proofs given. Conclusory statements were permitted to some extent. This circuit has previously ruled in Carlson and Foman and Tamayo that notice pleading should be short and plain. It should give notice to the defendants of the claims which are brought against them. It should be a recitation of the claims. Title 7 and section 1983 don't require heightened pleadings. Consistently in this matter, the defendants required heightened pleading requirements. Well the defendants don't impose the heightened pleading requirements, right? The pleading requirements are a function of case law and what the district court asked you to do. How come you didn't respond? Twombly and Iqbal do require to say a little bit more than maybe the gave you initial opportunities to amend. Well I did more. In fact, we ended up by the second amendment. We had a 63, 60 plus page document with over 300 paragraphs and I was told this is still not enough. This is still not enough. I sat with my then co-counsel and another attorney and they said let's streamline this process. Let's bring it down to just title, I mean section 1983. Let's look at issues that were common to all of the plaintiffs having to do with excessive discipline, having to do with denial of training for promotional opportunities and this should work. But you know the request for the third amendment was not granted. To follow up on that Ms. Willis, the critical document here seemed to me to be less the complaint in the district judge's view than your brief in response to the motion to dismiss the second amended complaint. That's document number 22 in the district court which led the district judge Coleman to dismiss here. And I guess the way I would characterize this, I don't know whether the defendant's arguments were right or wrong. Some of them certainly under the Railway Labor Act seemed very strong. But I look at the brief you filed in response to the motion to dismiss and I don't see any real legal arguments. I don't see any cases cited. I don't see any engagement with the defendant's arguments. Why was it an abuse of discretion for Judge Coleman to treat that document as effectively a waiver of the substantive arguments that you're motion to dismiss? Particularly with regards to the Railway Labor Act. The Railway Labor Act was not, in my opinion, and most of the case law considered, totally dispositive of these actions. They talk about the minor dispute issues. I felt the issues here were more of a constitutional deprivation. Well that's, it's pretty clear that your understanding of what's major and minor under the Railway Labor Act, well, under that law it's not the colloquial meaning of those terms, right? Understood. But, and I understand you may want to argue about the merits of that now, but I don't see any of that in your brief in the district court. Okay, I think I did mention that the Railway Labor Act was not the appropriate venue because we were alleging violations of constitutional rights. Well, it's responsive to your breach of contract claims. Yes. And I don't, I mean, I look at this document, I don't see a case, I see a reference to 1983 and a couple of statutes, but I don't see any engagement with the arguments. And that's why I go back to my question, why was it an abuse of discretion for Judge Coleman to look at this and say, you just haven't engaged, this is a waiver. Okay, I, it was my understanding that I needed to speak to the underlying issues in bringing the complaint before the court. I was not aware, as a, this was my first federal case, I was not aware that I needed to at that point engage in discussions of various case law, as I did later on in the transaction. I felt that the issues had to do with the, either the appropriateness of the claims, the degree to which the claims needed to be addressed in any definitive way, and that we were dealing with issues of how much detail I had to give in order to bring legitimate claims of either racial discrimination or retaliation or the gender or the disability discrimination. As a new practitioner in the federal court, I wasn't aware that I had to argue at that point the various case laws. So that may have been an omission on my part. But in terms of my belief in the merits of the claims of these plaintiffs, I felt that the merits were very strong. This was not futile litigation. It was not meant to be vexatious. It was not meant to be evidence of bad faith, because I felt that these plaintiffs needed to be heard. Okay. Are there other things you want to tell us? Okay. In addition to the constant heightened requirements of the defendants, I felt that even their response to the brief that was filed here before the appellate court constantly relied on summary judgment cases, which were not relevant to what we were dealing with here at the notice level. The cases did not track the arguments that were raised in the appellant's brief. And they did not address the issues that I brought forth. There was a response having to do with the need to attach an amendment to a 59E motion for reconsideration. It was not a motion for an amendment. It was a motion to reconsider the decision to dismiss with prejudice. Now, the defendants initially gave an option to sever the group. They did not only ask for dismissal of the claim. A dismissal, a severance of the group would have been more acceptable than a draconian measure to dismiss all 12 plaintiffs with prejudice. We thought that that was a bit excessive in that decision. The defendants also talked about forfeiture and waiver. The appellants felt that in the response that they gave with regards to the second and the proposed third amendment, that there was no forfeiture, there was no waiver. That we did reiterate the claims and the positions that we had taken with regards to the issues raised in our complaint. So we're asking that this panel consider a vacation, I'm sorry, consider to vacate the underlying order of dismissal with prejudice. Because we feel that that was a bit excessive. A dismissal with an opportunity to review the actions. A dismissal or even an effort to sever the group would have been less extreme. There were issues that could be cured. There was nothing here. There was no attack on all 12 of the plaintiffs until the appeal that all 12 of the plaintiffs' claims were not considered defective. We felt that anything that was raised below, there were opportunities to cure them. And we would like the opportunity to cure any deficiencies that were noted. Section 1983 was the primary focus of the third amendment. And the effort to streamline the claims of the appellants. To allow this decision to stand would be a devastating effect, not only on these appellants, but it would be a chilling effect on the plaintiff's employment bar. Because of the heightened pleading requirements. Because of the attack on counsel in terms of having to meet those heightened pleading requirements. And a chilling effect on prospective plaintiffs who are concerned about having to come forth with their complaints of discrimination. Because they're concerned that the court may not be listening. I know when we made an effort to find co-counsel, I never wanted to bring this as one person, a lawyer on this case. But when we sought to get co-counsel, I heard a lot of, oh, that's the sanctioning Seventh Circuit. We don't know that we want to do that. Not one counsel indicated. Is there a sanction order imposed by the district court in this case? Yes, there is a sanction order. Based on the view that it was a frivolous litigation. Has that been, has a final sanction order been imposed yet? It is not, well, the order was briefed. And the Judge Coleman indicated that she would be making a final decision. But has not yet? Not yet. It's not yet. But this was brought in good faith. Most of this was done actually pro bono. Because of the number of officers that were terminated, they could not afford legal fees. There are only three that, as I said, are currently working. Almost a year before this was filed, which is two years ago, virtually today. Almost a year before it was filed, I tried to find non-judicial means of resolving this. You know, I went through the EEOC's regional counsel. I went through the EEOC federal investigator that was handling all of the METRA matters. I went to the METRA board. I went to the CEO. I sat down with METRA law department management. And when that failed, I then sought to get someone to work with me on this matter. We found a wonderful lawyer that said she was excited about handling these kinds of cases. And she met with the group, and we thought everything was rolling. I was even paying her a bit out of my own pocket. And then just weeks before the case was to be filed, she notified us that she was taking a filling a vacancy, planning to fill a vacancy in the sub-circuit. And so you're on your own. She said, just make sure you know all the federal rules of civil procedure and a lot of the case law. So we went forward. The November filing, the first filing, only involved two of these plaintiffs. That's because their rights to sue were about to expire. I did not want to be the cause of their losing their right to sue. The other 10 were still caught up in the EEOC process to get the right to sue through the Department of Justice. So all 12 were not part of this litigation until January of last year. I'm willing to your rebuttal argument.  You want to save the rest of your time for rebuttal? Thank you, Ms. Willis. For the railroad, Ms. Coleman. Good morning. May it please the Court, my name is Minya Coleman, and I represent the defendant, Metra, and the 10 individually named employee defendants. And we ask that this Court affirm the dismissal of the District Court of plaintiff's corrected second amended complaint and the Court's denial of plaintiff's leave to file a third amended complaint. The questions before this Court are whether the District Court properly dismissed plaintiff's corrected second amended complaint and whether the District Court properly denied their leave to file a third amended complaint. And the answer to both questions is yes. The Federal Rules of Civil Procedure 8A2 requires that a plaintiff's complaint include a short, plain, or concise statement that demonstrates that the plaintiffs are entitled to relief. And this Court has consistently held that the primary purpose of Rule 8 is to provide the defendant with sufficient notice of the claims being brought against them and the basis for those claims. And the Supreme Court in Iqbal and Twombly have clarified what that notice pleading standard means. Sorry, you think Twombly and Iqbal clarified something? Clarified a pleading standard? Not clarified a pleading standard, but Iqbal and Twombly does allow the District Court to utilize its judicial experience and common sense to determine whether a plaintiff's complaint complies with the notice pleading standard. So did the District Judge here ever actually identify defects in the operative complaint? Yes, the District Court had the opportunity to review the record in its entirety. That's not my question. Did the District Judge identify specific elements that were missing from the complaint? In the District Court's order, Judge Coleman does not specifically identify what the deficiencies are. I didn't see them either. What I understood her to be saying, as I was suggesting in my colloquy with opposing counsel, is that she didn't engage because the plaintiffs didn't engage with the merits of your arguments. Judge Coleman does address the corrected Second Amendment complaint in the order, in her order. And Judge Coleman specifically refers to Defendant's Rule 11 letter and the basis for Defendant's motion to dismiss, and agrees with the Defendant that the pleading deficiencies that were identified in both the Rule 11 letter and both of Defendant's motion to dismiss were accurate, and therefore the... Is the Rule 11 letter part of our record? It should be, Your Honor. I apologize, but I do not have a site number to that document. So what was missing from the Second Amended complaint with respect, let's say, to the termination claims? To the termination claims? The plaintiffs attempt to plead a Title VII claim, I'm sorry, a 1983 claim of retaliation in relationship to their terminations. However, the plaintiffs, 12 plaintiffs, either fail to identify what the alleged adverse action was or they fail to identify... I'm sure it's not evident that it was termination. I'm sorry, say that again. It's not evident that it was termination, that that was the adverse action taken against them? Not in each case with the plaintiffs. How about for the nine who were terminated? Well, they may identify an adverse action, but those plaintiffs fail to identify a constitutionally or statutorily protected activity that they were engaged in that caused or led to the alleged adverse action. Specifically, if we look at Plaintiff Brewster, Plaintiff Brewster does not identify a protected activity in which she was engaged in prior to the alleged adverse action. Similarly, Plaintiff Jackson does not allege or identify a protected activity that occurred prior to the alleged adverse action, which was the termination. And did they contain allegations that adequately tied any adverse action to racial discrimination? No. If we look at plaintiffs, plaintiffs also attempt to allege a harassment claim under 1983. However, it was equally as deficient as the retaliation claim under 1983. There, Plaintiff Harleston identifies multiple occurrences that occurred during his employment. However, none of the identified occurrences gave rise to what can be reasonably presumed to be the alleged constitutional deprivation. Additionally, Plaintiff Harleston fails to identify, I'm sorry, fails to identify or plead that the alleged adverse action against him caused any material change in his employment. Similar to Plaintiff Harleston, Plaintiff Longstreet and Plaintiff Robertson also fail to identify the necessary elements to plead a harassment claim under 1983. Counsel, do you agree, Judge Hamilton asked before whether Judge Coleman construed the plaintiff's failure to really respond to the legal arguments made in the motion to dismiss as kind of a waiver of those arguments. This is just facts in response, no argument about why the facts alleged actually stated a claim that would be cognizable under the law. Do you agree with that characterization, that she viewed any response as waived to the motion to dismiss? Yes, we do. And defendants addressed that in their response brief, that plaintiffs essentially waived the claims by not defending them in a lower court. So you view really this as a case of about 12 v. 6 as opposed to a case about refusing to permit amendment. I'm sorry, can you repeat that? Well, the plaintiff spent a lot of time in the brief talking about the district court's abusive discretion and refusing to let them amend the brief to cure the deficiencies, focusing less on the 12 v. 6 and the argument that Judge Hamilton is identifying here about their failure to respond to the merits of the 12 v. 6 motion. And what I hear you saying is that the 12 v. 6 motion really is the heart of the case and why we should affirm the district court. Well, Judge Coleman addressed both the corrected second amended complaint and plaintiff's motion for leave to file a third amended complaint. And the district court's review of that motion and the attached motion, the court properly opined that after review of both the corrected second amended complaint and the proposed third amended complaint, that the third amended complaint was riddled with the same level of pleading deficiencies that were identified in the corrected second amended complaint. And those kind of pleading deficiencies are prevalent throughout the entire corrected second amended complaint, which is the operative complaint that is subject to this court's de novo review. If we look at plaintiff's attempt to plead an Illinois Civil Rights Act violation of the Illinois Civil Rights Act of 2006, there's no factual support for a claim such as this in this litigation. Similarly, plaintiff's breach of contract claim is equally as deficient. That claim arises from grievances that each of the 12 plaintiffs had with their respective disciplinary processes. And the Seventh Circuit, along with the U.S. Supreme Court and Hawaiian Airlines, have drawn the distinction of what claims are independent of a collective bargaining agreement and those claims that can be conclusively resolved by a collective bargaining agreement. And both courts have confirmed that claims that can be conclusively resolved by a collective bargaining agreement are those that are preempted by the Railroad Labor Act. And those are exactly the claims that the plaintiffs were presenting in this case. Similarly, Plaintiff Luster attempts to allege a violation of the ADA. However, Plaintiff Luster fails to identify what disability is at issue, which means that the only remaining claims left in Plaintiff's corrected Second Amendment complaint would be their Title VII claim and the 1983 claim. The 1983 claim, as we've already discussed, is deficient. And the Title VII claim is equally as deficient. There, the only plaintiffs that are bringing forth a Title VII claim are Plaintiffs Brewster, Plaintiff Smith, and Plaintiff Jackson. Each of those plaintiffs attempt to allege either a violation of Title VII for race discrimination, gender discrimination, or harassment. However, as pled, it is unclear to the defendant which of those allegations are to be attributed to which of the particular violations of Title VII. If we look at plaintiffs... Why isn't that the kind of thing that could be sorted out in a pretrial conference? I'm sorry? Why isn't that the kind of thing that could be sorted out and clarified in a pretrial conference or discovery? With contention interrogatories, for example. I'm sorry, I don't understand the question. With contention interrogatories, where you simply ask the plaintiff for more specifics. Well, in order to get to that level, the plaintiffs first have to satisfy the pleading standard. They have to have a... Well, that's a circular answer. That is, why does the pleading standard have to be so tight that it would relieve you of any need, for example, or opportunity for just asking for clarification? We see case after case in which months and sometimes years are spent in efforts to polish the pleadings before anybody actually gets down to facts and evidence. And there are tools to get there. If that was, and I'm not arguing that that's not a possibility. However, it is not a avenue or opportunity that the plaintiff attempted to avail themselves to. I'm talking about it's an opportunity for you, as the defendant, to clarify matters that might not have been as clear as they should have been in a complaint. Well, the defendants did take an opportunity with counsel to try to address some of the pleading deficiencies. The parties engaged in a 37.2 conference to discuss the pleading deficiencies that are identified in the second amended complaint. Following that, plaintiffs had additional conversation with counsel regarding the pleading deficiencies prior to filing their or issuing their Rule 11 letter. Based on those conversations, the parties did agree to an additional amendment to the complaint. However, that amendment, which was the corrected second amended, was still as equally as deficient. And therefore, defendants moved to pursue their motion to dismiss that complaint. And you're pursuing Rule 11 sanctions in the district court? Yes, Your Honor. Against counsel only or against the plaintiffs personally? I believe these sanctions are against counsel only. And it is the defendants position that the court, the district court, granted plaintiffs multiple opportunities to cure the deficiencies that we've discussed today. And at each juncture, plaintiffs failed to do that. And the Seventh Circuit has consistently upheld a district court's dismissal of a plaintiff's complaint for failure to cure deficiencies that have been identified in prior amendments. Now plaintiff argues that they amended the pleading and they added additional material or added additional facts. However, even with adding those additional facts, it failed to satisfy the notice pleading standard. And it failed to put defendants on notice of what the basis for the claims were that were being brought against them. And when given an opportunity to defend their pleading, either in response to defendants motion to dismiss or in oral argument before the district court, the plaintiffs were still yet unable to clarify the 200 plus allegations or how the amendment or the proposed additional facts satisfied the notice pleading standard. And it is at that point that the district court properly exercised its discretion in denying their leave to file a third amended complaint. Now the Federal Rules of Civil Procedure 15A2, it permits the court to freely grant leave to the plaintiff to amend their pleading. However, there is nothing in the rule that requires the court to yield an unlimited amount of opportunities to conform a pleading to the standard. And the Seventh Circuit has specifically addressed this and affirms that the district court has the discretion to essentially say that enough is enough and no additional amendments are permitted. And that here was definitely the case because plaintiffs filed their initial complaint, they amended the complaint, after the 37.2 conference, parties agreed to allow an additional amendment to the complaint. Plaintiffs then petitioned the court to grant them additional leave to correct the second amended complaint. And at that time, Judge Coleman insisted that the plaintiffs take enough time  Plaintiffs insisted that it did not need to file an additional amendment to the complaint, but just needed to make minor corrections. And even though the motion to reconsider is not at issue before this court, it was still yet another opportunity for the plaintiffs to demonstrate the plausibility of their claim and they were yet unable to do so. And as reflected in Judge Coleman's opinion, the court reviewed the record in its entirety, including the proposed third amended complaint, and determined that it was equally as deficient as the prior amendments. And for those reasons, defendants ask that this court affirm the decision of the district court dismissing plaintiffs' corrected second amended complaint with prejudice and denying their leave to file a third amended complaint. Thank you. Thank you, counsel. Ms. Willis, rebuttal? The first question that the panel had asked and the appellees seemed to dance around is that Judge Coleman did not identify specific elements that were missing in the plaintiff's complaint. That would have been very helpful. That did not happen. Also, the defendants talked about a Rule 11 letter. I saw the Rule 11 letter for the first time as an attachment to the motion to dismiss. I never received a Rule 11 letter prior to that, and the record reflects that the district court that that is the case. There was no conference between the plaintiff and the appellants having to do with concerns about deficiencies in the complaint. That would have been very helpful if there had been some discussion between counsel as to what needed to happen to make some changes there. You're saying that the conference that Ms. Coleman described did not happen? It did not happen. We did not sit down and talk about specifically what needed to change. That would have been very helpful to me if there had been the face-to-face or even a telephone conference saying, this needs to happen, that needs to go away, this needs to go away. In the third amendment complaint, we did remove the language having to do with the Illinois Civil Rights Act. I was unaware that that required, that had to address physical intimidation. That came away. The contracts claim was also removed because the Railway Labor Act, of course, talks about arbitration, but we recognize the fact that the Railway Labor Act is not an exclusive remedy here. The Railway Labor Act deals with collective bargaining issues. It is more arbitration and more collective bargaining and more agreement, but we were dealing with more serious issues. The Railway Labor Act was never meant to address constitutional violations, and that's what we were alleging. All of the plaintiffs that have been terminated were terminated pursuant to a Railway Labor Act hearing. The 14th amendment is barred at the door of a Railway Labor Act hearing. You know before you go into the hearing that you're going to be terminated because they told you before the hearing that you're going to be terminated. This was a matter that needed to go outside of that parameter and into the court. The majority of the plaintiffs, as you know, were not a part of that first complaint. The majority of the plaintiffs have only had two of the Apple, therefore. They were only allowed in as of January of last year to raise their complaints and to address them. Anything further, Ms. Willis? No, there's nothing. Thank you very much to both counsel. The case will be taken under advisement.